DAVID L. PINKSTON (6630)
P. MATTHEW COX (9879)
SNOW, CHRISTENSEN & MARTINEAU
*Attorneys for Plaintiff East Birch Creek, Inc.*
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EAST BIRCH CREEK, INC., a non-profit Utah corporation,<br><br>              Plaintiff,<br><br>    vs.<br><br>THELAUNDRYLIST.COM, INC, a California Corporation; and BRIAN COHEN, an individual,<br><br>              Defendants. | **AMENDED COMPLAINT**<br><br>Case No. 2:20-cv-00673-DAO<br><br>Judge Daphne A. Oberg |

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff East Birch Creek, Inc., ("EBC") is a non-profit corporation, organized under the laws of the state of Utah, with its principal place of business in Utah County.

2.      Defendant TheLaundryList.com, Inc. ("TLL") is, on information and belief, a corporation organized under the laws of the state of California, with its principal place of business in Los Angeles County, California.

3.      Defendant, Brian Cohen ("Mr. Cohen") is, on information and belief, a resident of Los Angeles County, state of California, and is a principal of TLL.

4.      TLL and Mr. Cohen are sometimes referred to, collectively, as the "Defendants".

5.      This controversy is between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This Court therefore has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and venue properly lies in this District.

## GENERAL ALLEGATIONS

6.      EBC is a non-profit Utah corporation, in the business of providing work opportunities for persons with disabilities.  One of those work opportunities is providing laundry services.

7.      On or about June 13, 2019, EBC received a proposal (the "Proposal") from TLL, signed (electronically), by Brian Cohen, its principal, to broker the sale of the following pieces of heavy-duty commercial laundry equipment, owned by EBC.  The Proposal indicated that TLL would pay EBC the amounts listed for each piece of equipment:

| | |
|---|---|
| (1) 2015 B&C 275lb. Washer Extractor | $ 28,500.00 |
| (1) 2015 B&C 325lb. Gas Heated Dryer | $ 18,000.00 |
| (1) 2015 Rapidd Feed Mat Roller | $ 5,000.00 |
| (1) Lot of approx. 1800-1850 Floor Mats | $ 55,000.00 |
| Total: | $106,500.00 |

(collectively the "Equipment").  The Proposal also identified two 60 lb. washers, which were not delivered to TLL and not involved in this lawsuit.  A copy of the proposal (with addresses, phone numbers, etc. redacted) is attached as Exhibit A.

8.      At the time EBC received the Proposal, it was planning to sell the Equipment at a trade show.  Mr. Cohen, however, urged EBC not to do so, representing that TLL had multiple buyers interested in the Equipment.

2

9.      Mr. Cohen and TLL further represented and promised EBC that TLL would pay for all costs of loading the Equipment.  On information and belief, Mr. Cohen and TLL contacted a company in Orem, Utah, to inquire about moving the Equipment but reportedly refused to hire that company because they were too expensive.

10.     In reliance on the Proposal and in acceptance of the same, and in further reliance on Mr. Cohen's representations, between June 2019 and November 2019, EBC, at its own expense, arranged for the removal and loading of the Equipment, with the help of Andrea Moricci, TLL's engineer.  Despite Mr. Cohen's promises and representations, EBC was required to pay for the removal and loading of the Equipment itself and has not been reimbursed by TLL.

11.     In fact, EBC spent an entire day loading a truck with part of the Equipment.  At the end of that day, the driver, hired by TLL, instructed EBC to remove the Equipment from his truck so he could carry a different load.  As such, EBC was required to expend resources to load the same Equipment twice, with no reimbursement from TLL.

12.     Pursuant to the Proposal, EBC was not responsible for the cost of actually transporting the Equipment, so it did not pay for transportation, just removal and loading.

13.     EBC also communicated with Mr. Cohen's assistant, Hadia.  Hadia represented that she was communicating with Mr. Cohen and arranging the transportation of the Equipment.

14.     TLL arranged and coordinated the shipping of all of the Equipment.  On information and belief, all of the Equipment was shipped outside the state of Utah.  On information and belief, the Equipment was either shipped to potential buyers or is still in the possession of TLL, Mr. Cohen, or its agents.

3

15.     Pursuant to the Proposal, TLL was to pay EBC the full amount due to EBC under the Proposal, prior to the "removal of the equipment and setting on trucks."  At the time of removal of the Equipment, however, Mr. Cohen said he wanted to get the Equipment to the buyers first.  Mr. Cohen also represented that one buyer wanted to count the floor mats, specifically, before paying for them.

16.     In any event, TLL did not honor the Proposal and did not pay EBC for the Equipment at the time of removal, nor has it paid since, despite repeated demands from EBC and its employees.

17.     Further, TLL and Mr. Cohen have failed to respond to EBC's numerous calls and emails, attempting to ascertain the status of the Equipment and payment to EBC.

18.     TLL owes EBC the sum of $106,500.00, as payment of the net amount for the Equipment, together with accrued prejudgment interest at the legal rate, from and after November 1, 2019.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – TLL)

19.     EBC incorporates the allegations above as though fully set forth herein.

20.     The terms of the Proposal represent valid, binding contractual obligations of TLL.

21.     EBC accepted the terms of the Proposal by, among other things, loading the Equipment, at its own expense and with the assistance of TLL's engineer, and turning the Equipment over to TLL to ship, pursuant to the terms of the Proposal.  EBC therefore performed under the contract formed by the Proposal.

22.     TLL has breached the contract represented by the Proposal by, among other things, failing to pay EBC the amounts it promised and represented it would pay in the Proposal.

4

23. The drivers of the trucks that shipped the Equipment represented to EBC that the Equipment was being delivered directly to the two different buyers, one in the Northeastern United States, one in the South, as directed by TLL.

24. On information and belief, the Equipment was either shipped to those buyers or is still in the possession and control of TLL. Either way, TLL has failed to pay EBC, as promised.

25. EBC has been damaged by TLL's breaches, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

**SECOND CLAIM FOR RELIEF**
**(Fraud, Negligent Misrepresentation, False Representation, and False Pretenses –**
**TLL and Brian Cohen)**

26. EBC incorporates the allegations above as though fully set forth herein.

27. Mr. Cohen made express misrepresentations to EBC of then-presently existing material facts, including but not limited to, his representation that he had multiple buyers interested in the Equipment and, as such, EBC should use TLL as a broker and not try to sell the Equipment at a trade show.

28. Mr. Cohen, directly and through his employees and agents, made further misrepresentations that the Equipment was being delivered to buyers in different parts of the United States.

29. Mr. Cohen's representations were false. EBC delivered the Equipment to TLL and its shippers in late 2019 but have still not been paid. Either Mr. Cohen and TLL were misrepresenting the existence of the buyers or Mr. Cohen and TLL are wrongfully retaining the net sales proceeds.

30. At the time Mr. Cohen made the representations about potential buyers, he knew those representations to be false or made them recklessly, knowing he lacked sufficient knowledge upon which to base such representations.  In the alternative, he made the misrepresentations carelessly or negligently.

31. Mr. Cohen made the representations with intent to deceive EBC and to induce EBC into delivering the Equipment to TLL.

32. EBC, unaware that the representations were false, did, in fact, rely upon Mr. Cohen's misrepresentations and removed and loaded the Equipment with TLL's shippers and agents.  EBC's reliance was justifiable and reasonable.

33. The misrepresentations of Mr. Cohen, were also false pretenses, intended by him to create and foster a false impression that EBC should not attempt to sell the Equipment at a trade show or otherwise and that Mr. Cohen had multiple buyers interested in the Equipment, when, in fact, he did not have such buyers or Mr. Cohen and TLL did not intend to deliver the sales proceeds.  Such false pretenses consisted of a series of events—including multiple phone calls from Mr. Cohen and Hadia--when considered collectively, that created a contrived and misleading understanding of the Proposal, in which EBC was wrongfully induced to deliver the Equipment to TLL.

34. Mr. Cohen and TLL intentionally engaged in a scheme to deprive or cheat EBC out of money and legal rights.

35. Mr. Cohen and TLL were active, willing, and knowing participants in the scheme to defraud EBC and are jointly and severally liable to EBC.

6

36.     EBC has been damaged by the fraud, negligent misrepresentations, false representations, and false pretenses of Mr. Cohen and TLL, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

**THIRD CLAIM FOR RELIEF**
**(Conversion and Civil Theft – Mr. Cohen and TLL)**

37.     EBC incorporates the allegations above as though fully set forth herein.

38.     TLL and Mr. Cohen wrongfully retain the Equipment or its proceeds and have intentionally, willfully, and improperly interfered with the Equipment or its proceeds, without lawful justification or excuse and without EBC's knowledge or consent.

39.     In November, 2019, EBC delivered the Equipment to the shipper, who was acting as agent of (and under direction of) TLL and Mr. Cohen.  On information and belief, the shipper either delivered the Equipment to TLL or TLL's buyers.  In either case, TLL has failed to pay EBC.  For TLL and Mr. Cohen to retain the Equipment or its proceeds for almost a year, without payment to EBC--and despite repeated demands for payment or even some communication about the status of the Equipment--is improper.

40.     TLL and Mr. Cohen had full knowledge of the specific consequences of their conduct but acted notwithstanding, knowing full well that their conduct would cause particularized injury by depriving EBC, the owner of the Equipment—of the use, value, and possession of the Equipment or its proceeds.  TLL and Mr. Cohen not only intended the conduct of retaining the Equipment or its proceeds without delivering payment to EBC, but they also intended the injury to EBC or believed that the injury was substantially certain to result from their conduct.

7

41.     TLL and Mr. Cohen are wrongfully and intentionally exercising dominion and control over the Equipment or its proceeds in violation of, and inconsistent with, the rights of EBC, as the owner.

42.     TLL and Mr. Cohen have misappropriated and converted the Equipment or its proceeds, without EBC's knowledge or consent, done intentionally and without justification and excuse, to EBC's injury.  Further, their conduct constitutes the felonious taking of another's personal property with intent to convert it or deprive the owner of the same.  As such, their conduct constitutes willful and malicious injury, as well as larceny.

43.     TLL and Mr. Cohen were active, willing, and knowing participants in the conversion and civil theft of the Equipment or its proceeds and are jointly and severally liable to EBC.

44.     EBC has been damaged by the conversion and civil theft, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

### FOURTH CLAIM FOR RELIEF
**(Specific Performance - TLL)**

45.     EBC incorporates the allegations above as though fully set forth herein.

46.     In the alternative, and in the event that EBC's damages may not be calculated or ascertained or are deemed speculative, EBC is without a just and proper remedy at law.  It is therefore entitled to equitable relief in the form of an order in the nature of specific performance, requiring that TLL sell the Equipment, as promised, and deliver the entirety of the proceeds to EBC, in an amount no less than than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

**FIFTH CLAIM FOR RELIEF**
**(Quantum Meruit / Unjust Enrichment / Implied Contract - TLL and Mr. Cohen)**

47.  EBC incorporates the allegations above as though fully set forth herein.

48.  In the alternative and in the event no express contract exists between the parties, EBC is nonetheless entitled to recover against TLL and Mr. Cohen under the two branches of the doctrine of *Quantum Meruit:* contract implied-in-fact, and contract implied-in-law (unjust enrichment or "quasi-contract").

49.  In the Proposal, as well as in their separate conversations and interactions, TLL and Mr. Cohen requested that EBC deliver the Equipment to TLL, rather than attempt to sell it elsewhere.

50.  Based on the Proposal delivered by TLL and Mr. Cohen, EBC expected TLL or Mr. Cohen to sell the Equipment to third parties and to compensate EBC for the Equipment, in the amounts set forth in the Proposal.  TLL and Mr. Cohen knew, or should have known based on the clear language of the Proposal, that EBC expected to be compensated for the Equipment in the amount set forth in the Proposal.

51.  By retaining possession of the Equipment or its proceeds without paying EBC, TLL and Mr. Cohen have received a benefit to which they are not legally entitled.

52.  TLL and Mr. Cohen have an appreciation and knowledge of this improper benefit; Mr. Cohen signed and delivered the Proposal to EBC, setting out the amounts TLL intended to pay to EBC.  Further, EBC has sent repeated demands for payment.

53.  Despite their representations and promises of payment, and despite the fact that EBC delivered the Equipment to TLL's shippers to be delivered to supposed buyers, TLL and Mr. Cohen have refused to pay EBC the amounts promised—or any amount, for that matter--or

to return the Equipment to EBC.  Under these circumstances, it would be unjust and inequitable for TLL and Mr. Cohen to retain the Equipment or the proceeds from the sale, if any.

54.    EBC is entitled to judgment against TLL and Mr. Cohen, arising out of their unjust enrichment and implied contract, in an amount to be determined at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, which is the amount TLL and Mr. Cohen proposed was the reasonable or market value of the Equipment, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

## SIXTH CLAIM FOR RELIEF
### (Promissory Estoppel – TLL and Mr. Cohen)

55.    EBC incorporates the allegations above as though fully set forth herein.

56.    EBC acted with prudence and in reasonable reliance on the promises made by TLL and Mr. Cohen that TLL had multiple buyers interested in the Equipment and that they would pay EBC the amounts listed in the Proposal.

57.    TLL and Mr. Cohen knew that EBC had relied on the promise of payment and the encouragement to sell with TLL rather than at the trade show.  TLL and Mr. Cohen should have reasonably expected such promise to induce action or forbearance by EBC.

58.    TLL and Mr. Cohen were aware of all material facts with respect to the Equipment.

59.    EBC relied on the promises made by TLL and Mr. Cohen, and that reliance resulted in losses to EBC, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

10

## SEVENTH CLAIM FOR RELIEF
### (Constructive Trust – TLL and Mr. Cohen)

60.     EBC incorporates the allegations above as though fully set forth herein.

61.     The value of the Equipment, if any part of it has been sold, can be specifically traced to the accounts of TLL and Mr. Cohen and their wrongful behavior because the Proposal identifies the amounts TLL and Mr. Cohen promised to pay EBC.

62.     Injustice would result if TLL and Mr. Cohen were allowed to retain the Equipment or its proceeds.

63.     EBC is entitled to the imposition of a constructive trust on the Equipment, or if any of it has been sold, the funds and assets of TLL and Mr. Cohen, to the extent of the value of the Equipment, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

## EIGHTH CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing – TLL and Mr. Cohen)

64.     EBC incorporates the allegations above as though fully set forth herein.

65.     Under Utah law, every contractual relationship includes a covenant of good faith and fair dealing, such that parties thereto are bound to act in good faith.

66.     By all of their conduct alleged herein, TLL and Mr. Cohen have breached that covenant, in the Proposal and their dealings generally with EBC.

67.     EBC has been damaged by this breach, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with prejudgment interest, at the legal rate, from and after November 1, 2019.

WHEREFORE, EBC demands judgment against TLL and Mr. Cohen as follows:

1.      On its First Claim for Relief, for judgment against TLL, as follows:

   a.      In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

   b.      Pre-Judgment interest thereon, at the legal rate, from and after November 1, 2019;

   c.      Reasonable attorneys' fees;

   d.      Costs of suit;

   e.      Post-judgment interest on the whole thereof at the legal rate; and

   f.      Such other and further relief as the Court deems just.

2.      On its Second Claim for Relief, judgment against TLL and Mr. Cohen, jointly and severally, as follows:

   a.      In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

   b.      Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

   c.      Reasonable attorneys' fees;

   d.      Costs of suit;

   e.      Post-judgment interest on the whole thereof at the legal rate; and

   f.      Such other and further relief as the Court deems just.

3.      On its Third Claim for Relief, for judgment against TLL and Mr. Cohen, jointly and severally, as follows:

a.      In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

b.      Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

c.      Reasonable attorneys' fees;

d.      Costs of suit;

e.      Post-judgment interest on the whole thereof at the legal rate; and

f.      Such other and further relief as the Court deems just.

4.      On its Fourth Claim for Relief, for a declaration from this Court, requiring TLL to specifically perform under the terms of the Proposal, and to deliver to EBC either the Equipment or its value, as set forth in the Proposal, in an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC, together with:

a.      Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

b.      Reasonable attorneys' fees;

c.      Costs of suit;

d.      Post-judgment interest on the whole thereof at the legal rate; and

e.      Such other and further relief as the Court deems just

5.      On its Fifth Claim for Relief, for judgment against TLL and Mr. Cohen, jointly and severally, as follows:

a.      In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

13

b. Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

c. Reasonable attorneys' fees;

d. Costs of suit;

e. Post-judgment interest on the whole thereof at the legal rate; and

f. Such other and further relief as the Court deems just.

6. On its Sixth Claim for Relief, for judgment against TLL and Mr. Cohen, jointly and severally, as follows:

a. In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

b. Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

c. Reasonable attorneys' fees;

d. Costs of suit;

e. Post-judgment interest on the whole thereof at the legal rate; and

f. Such other and further relief as the Court deems just.

7. On its Seventh Claim for Relief, for imposition of a constructive trust on the Equipment in the hands of TLL and Mr. Cohen, or on the funds and assets of TLL and Mr. Cohen, in the amount of the value of the Equipment, in an amount to be proven at trial, but in no case less than:

a. $106,500.00, as the amount TLL promised to pay EBC;

b.      Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

c.      Reasonable attorneys' fees;

d.      Costs of suit;

e.      Post-judgment interest on the whole thereof at the legal rate; and

f.      Such other and further relief as the Court deems just

8.      On its Eighth  Claim for Relief, for judgment against TLL and Mr. Cohen, jointly and severally, as follows:

a.      In an amount to be proven at trial, but in no case less than $106,500.00, as the amount TLL promised to pay EBC;

b.      Prejudgment interest thereon, at the legal rate, from and after November 1, 2019;

c.      Reasonable attorneys' fees;

d.      Costs of suit;

e.      Post-judgment interest on the whole thereof at the legal rate; and

f.      Such other and further relief as the Court deems just.

DATED this 2nd day of October 2020.

SNOW, CHRISTENSEN & MARTINEAU

/s/ David L. Pinkston
David L. Pinkston
P. Matthew Cox
*Attorneys for East Birch Creek, Inc.*

Plaintiff's Address:
278 Mountain Way Drive
Orem, Utah, 84058

15